CHARLES W. SANFORD ET AL., EXECUTORS, APPELLEES, V. FRANK A. LUNDQUIST ET AL., APPELLANTS.*

FILED DECEMBER 18, 1907. No. 14,921.

1. **Usury: COMPOUND INTEREST.** A contract to pay compound interest is not usurious, and will be enforced; but not in excess of the amount of simple interest computed at the maximum rate allowed by law.

2. ——: INTEREST ON INTEREST. Where the original obligation bears interest at the maximum rate allowed by law, there is no consideration for an agreement to pay interest upon interest computed for a time past and thus retrospective in its operation; but including such interest upon interest in a renewal note does not make the same usurious. It is enforceable for the amount thereof, less the interest upon interest included therein.

* Rehearing allowed. See opinion, p. 414, *post*.

3. Interest: PAROL AGREEMENT. Simple interest may, when it becomes due, be added to and made a part of the principal by including the same in a renewal note, or by a separate instrument given for that purpose, and thus be made to bear interest; but a mere oral promise to pay interest upon interest so accrued for an indefinite forbearance is not enforceable.

APPEAL from the district court for Saunders county: BENJAMIN F. GOOD, JUDGE. *Reversed.*

*Simpson & Good* and *Berge, Morning & Ledwith,* for appellants.

*M. B. Reese* and *H. A. Reese, contra.*

CALKINS, C.

This was an action to foreclose a mortgage, and the defense was usury. There were several causes of action stated in the petition upon different instruments; but, as the facts are similar, it will only be necessary to state in detail those from which arose the first cause of action. On the 16th day of March, 1885, the defendant obtained from the plaintiff a loan in the sum of $450, for which he executed his promissory note for that amount, payable in five years from date, with interest at 10 per cent. per annum. Forty-five dollars, the first year's interest, was deducted from the loan at the time it was made; and four notes for $45 each, maturing, respectively, on the 1st days of January, 1886, 1887, 1888 and 1889, were executed and delivered for the subsequent instalments of interest. These interest notes were drawn to bear interest after maturity. On March 14, 1900, three of the coupon notes had been paid; and the defendant on that date executed in renewal of the principal and interest unpaid his promissory note for the sum of $1,295.25, payable October 1, 1900, with interest at 10 per cent. per annum. The amount of this note was ascertained by compounding the interest unpaid on the original note annually. The mortgage sought to be foreclosed secured these notes. There was a trial upon the issues, and a finding by the judge of the

district court that, when interest became due upon each of the items making up the first and second causes of action, the plaintiff and defendant entered into an agreement that the plaintiff should carry such interest as separate loans, and should receive interest thereon at the rate of 10 per cent. per annum. From a decree upon this finding for the full amount the defendants appeal, contending, first, that the plaintiff was not entitled to include in the renewal notes any interest in a sum in excess of 10 per cent. simple interest upon the principal of the original note; and, second, that the renewal notes, having been taken for a sum in excess of the amount due on the original notes figured as simple interest, were usurious, and that the plaintiff is not, therefore, entitled to recover any interest on the renewal notes, being limited to the amount due on the original notes at the time the renewals were made.

1. A contract to compound interest on an obligation bearing less than the maximum rate is valid, if, when so computed, the interest does not exceed in amount simple interest computed at the maximum rate. *Richardson v. Campbell*, 34 Neb. 181. Such contract will not, however, be enforced beyond the limit of the highest rate allowed by law computed as simple interest. *Mathews v. Toogood*, 23 Neb. 536; *Rose v. Munford*, 36 Neb. 148. In neither case is the contract usurious, nor subject to the penalties of the statute against contracting for or receiving interest in excess of the amount limited by law. *Hager v. Blake*, 16 Neb. 12; *Rose v. Munford, supra; Lewis Investment Co. v. Boyd*, 48 Neb. 604. While the rule against allowing compound interest in excess of the highest legal rate computed as simple interest is not universal, it is general, and has been fully adopted in this state. It does not rest upon the ground that the agreement is usurious, but rather upon the ground that it is against public policy. These decisions do not declare the instruments subject to the penalties of usury. They simply refuse to enforce the stipulation for interest upon interest.

2. It being plain that the stipulation in the original obligation for compound interest did not make the contract usurious, it remains to consider the effect of including in the renewal notes compound interest. If a contract to pay compound interest before it has accrued is not usurious, it would seem that a contract to pay it after it is earned could hardly be subject to that vice. Some jurisdictions that refuse to enforce an agreement in advance to pay compound interest treat agreements made after it has accrued as valid. In these it is said that the borrower is under a moral obligation to pay interest on the interest which he failed to pay when it became due, and therefore, if he chooses to recognize this obligation and to pay such interest on interest or to give a new note of which it is a part of the consideration, that the transaction is not usurious, nor without sufficient consideration to support it. *Telford v. Garrels,* 132 Ill. 550; *Gilmore v. Bissell,* 124 Ill. 488. While we are satisfied that such inclusion of interest upon interest does not make a contract usurious, we cannot agree to the conclusion that there is a sufficient consideration for it. The rule against enforcing a contract by the debtor to pay compound interest in excess of the amount of simple interest computed at the maximum legal rate is founded upon the same reasons as are all usury laws. It is assumed that the debtor and creditor do not stand upon equal terms, and that it is necessary and proper to protect the former, as well from the consequences of his own imprudence and shiftlessness as from the oppression and rapacity of the latter. Whether the reasons for the rule are good, or the necessity for its adoption is real, we do not consider, for it is too firmly established to be changed, except by legislative enactment. Being the settled rule of law in this state, it should be so construed as to fulfil its reason and effectuate its purpose. It seems to us illogical to say that the debtor is under a moral obligation to perform a contract which the court has absolved him from on the ground that it savors of usury and is

against public policy. Every consideration that has led this court to adopt the rule in cases where the interest is contracted for in advance applies with equal or greater force where the agreement is made retrospectively. It was said by Mr. Chancellor Kent in *Van Benschooten v. Lawson,* 6 Johns. Ch. (N. Y.) *313, in speaking of such an agreement: "It is equally objectionable, as an agreement made at the time of the original contract or loan, that compound interest should begin and run upon the lawful interest the moment it falls due, whether payable yearly, half yearly, or quarterly; and such agreements are held to be oppressive. To exact from the debtor interest on the previous arrears of interest, without a previous special and particular agreement for that purpose, is inadmissible. It has no valid basis, nor any acknowledged legal consideration, on which it can rest, if the previous agreement, made at or after the time the interest became due, be wanting. It is the agreement, and not the law, nor the delay of payment, that will turn interest into principal. If the creditor was permitted to exact from the debtor a stipulation to pay interest on arrears of interest then due, it would lead to great and inevitable abuse. It would, perhaps, be less mischievous, because the parties would stand upon more equal terms, to allow of such a stipulation for compound interest, when the original contract is about to be made. The parties are, then, independent of each other; but, in the other case, the debtor is comparatively dependent, and probably distressed; and the creditor exacts the stipulation, under the evident advantage of power and superiority. The agreement, on the part of the defendant, to pay compound interest retrospectively, does not alter the case, for the maxim, '*volenti non fit injuria,*' does not apply in these cases." This case was followed in *Young v. Hill,* 67 N. Y. 162, 23 Am. Rep. 99, and the rule there announced is the one most consistent with the principles already adopted by this court for the enforcement of contracts for compound interest.

3. The plaintiff might have protected himself by insisting upon the payment of interest when due, taking renewal notes or separate obligations for the unpaid interest, for all the cases agree that a loan is not usurious because simple interest earned at the time of the renewal is included in the new principal (*Keiser v. Decker*, 29 Neb. 92), and it was doubtless in view of the application of this rule that the district judge made the finding that, when the interest payments became due upon each of the items making up the first and second causes of action, the plaintiff and defendant entered into an agreement that the plaintiff should carry said accrued interest as separate loans, and should receive thereon interest at the rate of 10 per cent. per annum. We have examined the record, and do not think the evidence sustains this finding. At the most, the alleged agreement amounted to nothing more than an oral promise of the defendant to pay interest upon interest for an indefinite forbearance. There was no time of extension agreed upon, nor any promise made by the plaintiff which would have prevented him from beginning an action at any time to recover the interest due.

We therefore conclude that the amount of the renewal notes in excess of the principal and simple interest computed thereon at the rate of 10 per cent. per annum was without consideration, but that they are valid obligations for the amount of principal and interest which the plaintiff was entitled to recover at the date of their execution, and that there is now due to the plaintiff that amount with 10 per cent. interest from the date of the renewal to the date of the decree.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a decree in accordance with this opinion.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, this cause is reversed and remanded for further proceedings in accordance with the above opinion.

REVERSED.

The following opinion on rehearing was filed October 22, 1908. *Former judgment of reversal vacated and judgment of district court affirmed:*

1. **Usury.** The demanding of interest in advance, even though the highest rate of interest allowed by law is being charged, is not usury in this state, as such a course is permitted by our statute. Comp. St. 1907, ch. 44, sec. 1.

2. **Parol Contract: CONSIDERATION.** An oral agreement for forbearance, and giving time for the payment of money then due, is a sufficient consideration to support an agreement on the part of the debtor to pay interest thereon.

3. **Interest, Compounding.** Where a principal note bears the maximum rate of interest allowed by statute, interest upon interest cannot be stipulated for at the time of the loan or contract, but if, after the interest is due, an agreement is made that it shall carry interest, such an agreement is valid and will be enforced.

4. ———. And in such a case, the fact that the principal note bears the maximum rate of interest allowed by law, and that such subsequent agreement to pay interest upon interest past due also stipulates for the payment of such maximum rate of interest, is immaterial.

5. **Evidence** examined, and *held* to sustain the findings of the district court.

FAWCETT, C.

Our former opinion, *ante,* p. 408, contains a very full and accurate statement of the issues involved in this case. Defendants base their claim for reversal on the following grounds: "(1) That the alleged agreements between the debtor and creditor, after the interest became due, are not established by the evidence, and, if they were, they did not warrant the inclusion of this compound interest in the renewals. (2) The mortgages are usurious, but, even if they are not, the compound interest is not collectible, since the original obligations already drew the highest rate of interest allowed by law."

It is insisted by the defendants that the evidence does not show that, when the interest payments became due from time to time, the parties agreed that the past due instalments of interest should be treated as principal and thereafter draw interest at the same rate as the principal note. The trial court found against defendants on this proposition, and we are unable to say that such finding is not supported by the evidence. On the trial, defendants called Mr. Charles W. Sanford, one of the plaintiffs, as their witness. Mr. Sanford testified that he was the son of Whitfield Sanford, the payee and mortgagee named in the notes and mortgages in controversy; that he attended to substantially all of the business of his father, Whitfield Sanford; that, when defendant Lundquist was notified from time to time of the maturity of the interest coupons, he "would come in—he would come up usually about that time to see me. If he could pay me, then, whatever he could pay was paid and indorsed upon the note. If he could not pay the interest, he would ask me if I could not carry it the same as the other, and promise to pay interest and treat it as a separate loan"; that the addition of the interest, and compounding it, was at defendant's request, "rather than to pay the interest that was due"; that no interest was ever charged on anything, or demanded on any part of the transaction in controversy, which was not due at the time it was charged, "due and past due"; that no agreement was ever made between the parties that defendants should pay any more than 10 per cent. on the amount due at the end of each year, and that no more than that sum was ever charged. Mr. Lundquist in some portions of his testimony denied these statements made by Mr. Sanford, but in other portions of his testimony corroborated him. He testified: "Q. When you would come and tell him you could not pay the interest, what would he say? A. He said he would extend it and make new notes. Q. And add the interest? A. Yes." Regardless of the fact that defendants, by placing Mr. Sanford upon the stand as their witness, vouched for his veracity,

and are bound by his testimony, he is corroborated by other facts and circumstances in the case. An attempt is made to show that Mr. Lundquist is a native of Sweden, and not well versed in the English language; but from his own testimony we gather that he moved to Saunders county in 1875, and has lived there ever since; that his son Frank, a man 29 years of age at the time of the trial in the district court, has always lived at home; that he is educated in English, in fact "has been all through the county school"; that defendant did not keep anything from him or any one in the family; that he talked about this business in the family. "Q. You did go on and talk, all of you, about it? A. Yes, sir. Q. You all knew about it? A. Yes, sir." He testified further that, when some of the mortgages in controversy were drawn, Mr. Sanford prepared them, and he took them home for the purpose of having his wife sign them, and the next day he and his wife went to Valparaiso and executed the mortgage, and that the son Frank, above referred to, went with them. It further appears from an examination of exhibit 20 that on April 2, 1903, Mr. Lundquist wrote a letter to Mr. Whitfield Sanford, in which he uses this language: "According to Charles' statement the mortgage is $9,552, but you should at least throw off the $552 for the big interest I have been paying, for I know of no one else who has been charging 10 per cent. on farm mortgages." This letter shows that at that time the old gentleman knew the amount which plaintiffs were demanding, yet no claim is made that he had been in any manner fraudulently or deceitfully dealt with, or that the amount claimed was not correct; nor is any claim made that he had ever paid any usury, or that he was entitled to deductions of any kind. He simply asked Mr. Sanford to "throw off" the $552, in consideration of the fact that he had been paying 10 per cent. interest. This testimony and these facts and circumstances, together with the fact that he deliberately and without any complaint or claim of injustice executed the notes and mortgages in controversy, so strongly cor-

roborate the testimony of Mr. Sanford that we cannot say that the district court erred in finding that, "when the annual interest payment became due upon each of the items making up the first and second causes of action, the defendant Frank A. Lundquist and Charles W. Sanford, as agent for Whitfield Sanford, entered into an agreement whereby the said Sanford should receive 10 per cent. interest annually in advance upon each of said interest payments then due, and at the request of said defendant such overdue interest payments were carried by Sanford for him as separate loans, and such compound interest was charged by the said Sanford annually by agreement with the said Frank A. Lundquist, and was included in the renewals set forth in the first and second causes of action; that the said Whitfield Sanford, in fact, carried said interest loans under said agreement until they were merged in the notes and mortgages set forth in plaintiff's first and second causes of action." We must therefore hold that, as to the questions of fact involved, the findings of the district court are sustained by the evidence.

Under the facts as thus found there is, we concede, some conflict in the authorities, but we think the overwhelming weight of authority sustains the conclusion of law reached by the trial court that the notes and mortgages in controversy were valid contracts which plaintiffs were entitled to have enforced. In *Connecticut v. Jackson,* 1 Johns. Ch. (N. Y.) *13, and *Van Benschooten v. Lawson,* 6 Johns. Ch. (N. Y.) *313, that eminent jurist, Chancellor Kent, announced a contrary doctrine, but we think an examination of later decisions in all the states clearly indicates that, had it not been for the eminence of Chancellor Kent, his holding in those cases would have been entirely without subsequent support. Notwithstanding his eminence, the doctrine announced by him has been repudiated in substantially every court of last resort in the land. The application of the principle announced by Mr. Chancellor Kent sustains our former opinion in this case; but a care-

30

ful reconsideration of the question convinces us that the rule laid down by the learned chancellor goes too far, and that the better rule is the one now generally applied that interest upon interest cannot be stipulated for at the time of the loan or contract, but if, after the interest is due, an agreement is made that it shall carry interest, such an agreement is valid and should be enforced.

It is insisted that *Mathews v. Toogood,* 23 Neb. 536, sustains defendants' contention; but we do not so understand that case. All that that case decides is that an agreement in advance to pay interest upon interest coupons after they are due, where the principal note draws the maximum interest, will not be enforced. That is not this case. The rule announced in that case is in harmony with the holdings of many eminent courts, and is in entire harmony with our holding in this case. That an agreement to pay compound interest does not render the contract usurious is well settled in this as well as in other courts. *Weyrich v. Hobelman,* 14 Neb. 432; *Rose v. Munford,* 36 Neb. 148; *Steen v. Stretch,* 50 Neb. 572; *Otis v. Lindsey,* 10 Me. 315; *Hale v. Hale,* 1 Cold. (Tenn.) 233. In the last case, the court say: "There can be no plainer legal proposition stated, than that compound interest is not usury. In the language of the court, in *Kellogg v. Hickok,* 1 Wend. (N. Y.) 521, 'compound interest has nothing to do with the question of usury.'" In *Fobes & Adams v. Canfield,* 3 Ohio, 17, in a case similar to the one at bar, the court say: "A sum of money due for interest is as justly and fairly due as for any other consideration, and an agreement to pay interest upon it after it is due cannot be deemed usurious. * * * But if, when the interest is due and payable, and constitutes a then subsisting debt, the debtor ask to retain it, and pay interest upon the amount at the legal rate of interest, the agreement is not usurious. It is nothing more than an agreement to pay legal interest for the forbearance of enforcing the collection of a debt then actually due and demandable." In *Telford v. Garrels,* 132 Ill. 550, it is said: "Where a debtor has agreed to pay

annual interest, and upon a settlement with his creditor consents to allow interest on such annual interest not paid when due, the transaction will not be unlawful or usurious." In *McGovern v. Union Mutual Life Ins. Co.*, 109 Ill. 151, the court say: "When interest upon a note is past due, no reason is perceived which will prevent the holder from taking a new note from the debtor for principal and interest, and make this sum bear the legal rate of interest. Such a transaction is in all respects legitimate." In *Paulling v. Creigh's Adm'rs*, 54 Ala. 646, the court say: "As a mere incident, interest on interest is not allowed or recoverable. A promise to pay it is not, however, usurious or illegal, or without consideration, and the weight of authority is, perhaps, in favor of the validity of the promise to pay it, at law, whether made at or subsequent to the original contract. 1 Am. Lead. Cases, 650. The claim to such interest is usually regarded by all the authorities as founded in justice, and a note or other security given for it, after it has accrued, will be sustained and enforced. Ib. 561. Accounts may be legally settled on the basis of such interest, and an express promise to pay the balance is valid and binding. Ib. In the case of *Eslava v. Lepretre*, 21 Ala. 504, 530, it is said: 'When interest has once accrued due, it becomes a debt. There is no longer, therefore, any objection to an agreement *inter partes*, that it shall be considered principal, and thenceforth carry interest.'" In *Gilmore v. Bissell*, 124 Ill. 488, the court say: "The addition of this amount (the interest on the past due interest) to the debt, and the agreement to pay it, it is insisted, rendered the transaction usurious. We do not concur in this view. The mortgagors had agreed to pay the interest on the mortgage debt annually, and it was their duty to observe that agreement; but they had failed to pay as the interest each year become due. When the time, however, came to renew the debt, the mortgagors had the right, if they saw proper, to redeem their agreement and pay interest on the interest; and their agreement to pay that interest was not illegal, nor did it render the

transaction usurious. What was done was but the performance of a contract made by the parties, which they had the right to do. If authority was needed to sustain the view of the circuit and appellate courts, *Haworth v. Huling,* 87 Ill. 23, is conclusive of the question made." In *Haworth v. Huling,* referred to above, the court say: "The point made, that complainant was allowed compound interest, is not well taken. The principal debtor had agreed to pay annual interest, and on the settlement made July 11, 1865, there may have been interest allowed on annual interest maturing on the notes, and not paid when due, but that is not certain under the evidence. But, if there was, the transaction was not illegal. The mortgagor could pay interest on interest previously due on his indebtedness under his contract, if he chose." In *Gunn v. Head,* 21 Mo. 432, the court say: "The court was evidently mistaken in the notion that interest cannot bear interest. Parties cannot prospectively agree that interest may bear interest; but, after interest has accrued and is due, it may be agreed that such interest may bear interest." In Perley, Law of Interest (1893), p. 158, it is said: "If an agreement is made to convert interest already due and payable into principal, or if accounts between parties are settled by rests, and therefore in effect upon the principle of compound interest, it is allowed." In *Craig v. McCulloch,* 20 W. Va., 148, the court say: "When by the terms of an obligation interest is payable at stated periods, interest upon interest from the time it becomes due only gives the creditor the usual equivalent for the nonpayment of the interest at the time agreed upon; and an agreement to pay such interest simply secures to the creditor that remuneration which he could obtain by collecting such interest and loaning it to another party. In some states a recovery may be had of interest upon interest under such circumstances without a special contract to that effect. * * * With us this is not allowed. But it is definitely settled in Virginia and this state that an agreement to pay interest upon interest is valid if made after the inter-

est which is to bear interest has become due.  \* \* \* This rule of law is, we think, sound and reasonable.  Money due for interest is as justly and fairly due as for any other consideration, and an agreement to pay interest upon it, made after it is due, cannot be regarded as unreasonable or inequitable.  When the interest has become due it is a debt which the creditor has the right to collect, and an action lies to recover it, although the debt on which said interest accrued may not then be due.  \* \* \* If instead of paying it the debtor asks to retain it and pay interest on it as any other debt, there can be no reasonable objection to his being permitted to do so.  It is nothing more than an agreement to pay interest for the forbearance of enforcing the collection of a debt then actually due and demandable.  \* \* \* The forbearance and giving time for the payment of money then due is a sufficient consideration to support the agreement.  \* \* \* The same reason which justifies the making of such an agreement for converting interest into principal once will justify the repetition of such agreements from time to time, as often as interest shall become due by the terms of the original contract out of which the interest arises, and the right to make such an agreement is not limited to converting interest into principal once upon the same debt." To the same effect as above are the holdings in Oregon, Iowa, Connecticut, Georgia, Illinois, Maine, Michigan, Virginia, West Virginia, Kentucky, Dakota, Massachusetts, Missouri, Alabama, Ohio, Pennsylvania, South Carolina, Tennessee, and the federal courts.  In fact, our attention has not been called to any recent case holding to the contrary.

In addition to what has been said, we think section 1, ch. 44, Comp. St. 1907, settles this case adversely to the contention of defendants: "Any rate of interest which may be agreed upon, not exceeding ten dollars per year upon one hundred dollars, shall be valid upon any loan or forbearance of money, goods, or things in action; which rate of interest so agreed upon may be taken yearly, or for any shorter period, or in advance, if so expressly agreed." In

the case at bar, the principal note was clearly within the above provision of the statute. The interest upon interest in each instance was agreed to be paid by the defendants in consideration of the forbearance on the part of his creditor, and the forbearance on the part of the creditor was a good consideration for the agreement on the part of the debtor to pay the interest upon interest. Some point has been made by defendants that the agreements from time to time to pay interest were of no force and effect because they were not in writing. This contention is without merit for two reasons: First, an oral agreement to forbear collection of a debt then due will support an agreement on the part of the debtor to pay interest; second, in the case at bar the oral agreements were subsequently reduced to writing and signed and acknowledged by the defendants; so that, even if the rule contended for by defendants were sound, it could not apply in this case.

Another point is made that, even if the agreements were made as claimed, they were void, because the effect was to impose an additional burden on the homestead without the wife's consent. This contention is also without merit, for the reason that the notes and mortgages were signed by both husband and wife, and duly acknowledged by them under circumstances which show no restraint or coercion on the part of the plaintiffs. In fact, the record nowhere shows any attempt at fraud, coercion, or deception on plaintiffs' part.

The demanding of interest in advance, even though the highest rate allowed by law is being charged, is not usury in this state, as such a course is permitted by our statute. When money is due from A to B, and B, at the request of A, forbears enforcement of payment under an agreement that A will pay B interest during the period of such forbearance, it is clear that such forbearance on the part of B is a sufficient consideration for A's promise to pay interest. If such forbearance is a sufficient consideration for A's promise to pay interest, then, clearly, the contract is not against public policy or in any sense inequitable.

The finding of the district court is that the agreement between Lundquist and Sanford for the payment of interest upon interest was, in each instance made, not when the loan was originally made, but when the several payments of interest became due and payable. Being due and payable, Sanford had a perfect right to enforce payment of the interest as a liability on the part of Lundquist separate and apart from the principal debt. If Lundquist had paid this interest, Sanford could have loaned it elsewhere, or, if Lundquist had paid the interest one minute, there can be no doubt but that he could have borrowed it again the next minute from Sanford, and have given Sanford his notes therefor, bearing interest at 10 per cent. At the time the notes in suit were made Lundquist was owing Sanford certain sums of money representing the principal sum originally borrowed. He was also owing Sanford large sums of money for interest upon that principal sum, which it must be conceded were enforceable. The sum due for interest had been due for a considerable time; some of it for long enough that, unless it had been in some manner waived, Lundquist could probably have pleaded the statute of limitations in bar. Sanford had forborne enforcing payment of those instalments of interest relying upon Lundquist's oral agreement to pay 10 per cent. interest on such past due instalments of interest. It must be conceded that such oral agreement to pay interest for the forbearance of Sanford at least created a moral obligation to make the payment as agreed, and we have never understood that it is unlawful, or against public policy, for a party to reduce to writing and legally bind himself to make good a moral obligation previously incurred. We think the rule here adopted in harmony with the holdings of the many eminent courts above cited is more in the interest of the debtor than the rule announced by Chancellor Kent. To adopt the rule laid down by the learned chancellor would close the door of leniency and make the creditor insistent upon prompt payment of interest on the day of its maturity, regardless of the immediate necessities

of his debtor; for it is a rare case where a money lender will grant forbearance without recompense.

Our present holding that interest upon interest cannot be stipulated for at the time of the loan or contract is not intended to be applied to cases where such stipulation for compound interest will not result in making such interest when so compounded exceed the maximum rate. As to such cases our former holdings are adhered to.

We recommend that the former judgment of this court be vacated and set aside, and that the judgment of the district court be in all things affirmed.

ROOT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is vacated and set aside, and the judgment of the district court is in all things affirmed.

JUDGMENT ACCORDINGLY.

REESE, J., not sitting.